451 So.2d 817 (1984)
Larry Harold GURGANUS, Appellant,
v.
STATE of Florida, Appellee.
No. 62432.
Supreme Court of Florida.
May 3, 1984.
Rehearing Denied July 10, 1984.
*819 Carl S. McGinnes, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
ADKINS, Justice.
This is a direct appeal from judgments adjudging appellant guilty of two counts of first-degree murder and two counts of attempted first-degree murder with a firearm. At sentencing, appellant (Gurganus) was sentenced to death and life imprisonment, respectively, for the two first-degree murder convictions. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On the afternoon of September 10, 1981, Gurganus walked into a convenience store in Bay County where his ex-wife was employed, brandished a gun, and ordered the three customers present to lie down. Gurganus then demanded that his ex-wife leave the store with him. He threatened to shoot her and the customers if she refused. She refused his demands and he shot her. He also shot each of the three customers once in the head, and shot at and struck another customer who happened to enter the store while this scene was unfolding. Gurganus then walked out of the store, drove off, and was later apprehended by police while walking down the road. As a result of the shootings, Gurganus' ex-wife and one of the customers died.
Gurganus was subsequently indicted by the Bay County grand jury on two counts of first-degree murder and three counts of attempted first-degree murder with a firearm. The defense gave notice that insanity would be relied upon as a defense. At trial a physician testified that Gurganus was under medication for severe headaches at the time of the shootings. The medication was Fiorinal, which is a barbituate compound. It was shown that the depressant effect of Fiornal would be multiplied if taken in conjunction with alcohol. The physician testified that the combined use of Fiorinal and alcohol in some instances could lead to violent behavior. A pharmacist testified that he had filled a Fiorinal prescription for Gurganus consisting of thirty-four capsules on the day prior to the shootings. *820 Further testimony showed that a prescription container with five Fiorinal capsules inside was recovered from Gurganus' possessions immediately after his arrest. It was unclear whether this was the same prescription that had been filled the previous day. Finally, evidence that Gurganus may have been drinking immediately prior to the shootings, as well as conflicting evidence of his appearance and behavior at the time of his arrest, was introduced.
Gurganus also attempted to introduce into evidence the testimony of two clinical psychologists who had examined him several times after his arrest. As a result of the state's objections on the grounds of irrelevancy, it was decided that the testimony would first be proffered to the trial court outside the presence of the jury. The testimony of both experts was based on the direct examinations of Gurganus and on hypothetical questions posed by the defense concerning the actions of an individual with a background similar to Gurganus' who had ingested twenty-nine Fiorinal capsules in a twenty-four hour period along with alcohol. The defense maintained that the expert testimony was relevant to several issues concerning Gurganus' state of mind at the time of the shootings. After hearing the proffered testimony, the trial judge refused to allow it into evidence on the grounds that the testimony was irrelevant.
At the close of the trial the trial judge instructed the jury on the charges of first-degree murder and attempted first-degree murder. He explained to the jury that the state's case would be satisfied if the jury found beyond a reasonable doubt that the murders or attempted murders were the result of either a premeditated design or occurred during the commission of a felony, specifically, whether the shootings occurred during the kidnapping or attempted kidnapping of Gurganus' ex-wife. After deliberation the jury returned guilty verdicts on the two counts of first-degree murder and acquitted Gurganus on the third count. At the sentencing proceeding the jury recommended life imprisonment for the killing of Gurganus' ex-wife and a sentence of death for the killing of the customer. The trial judge followed these recommendations in passing sentence finding three aggravating factors in support of the death sentence and only one mitigating factor. In addition, the trial judge sentenced Gurganus to two consecutive life terms for the attempted first-degree murder convictions.
The first issue which Gurganus raises relates to the guilt portion of the trial. Specifically, Gurganus urges that it was harmful error for the trial judge to exclude the proffered testimony of the two clinical psychologists from evidence. Because we agree with Gurganus we find it unnecessary to address those issues concerning sentencing and we reverse the convictions and remand to the trial court with instructions to grant Gurganus a new trial.
During the proffer of the psychologists' testimony the defense made it clear that the testimony was intended to be considered as evidence on three issues relating to Gurganus' state of mind at the time of the shootings: insanity; whether Gurganus' actions more closely resembled a "depraved mind" as opposed to premeditated behavior; and whether Gurganus was able to entertain the specific intent required to convict him of first-degree murder under either the premeditated or felony murder theories taking into consideration the effects of the combined consumption of drugs and alcohol. We will address the trial judge's decision to exclude the testimony as irrelevant on each of these three issues.
It is well established in Florida that the test for insanity, when used as a defense to a criminal charge is the McNaughton Rule. Under McNaughton the only issues are: 1) the individual's ability at the time of the incident to distinguish right from wrong; and 2) his ability to understand the wrongness of the act committed. Brown v. State, 245 So.2d 68 (Fla. 1971), vacated on other grounds, 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972); Campbell v. State, 227 So.2d 873 (Fla. 1969), cert. *821 dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970); Zamora v. State, 361 So.2d 776 (Fla. 3d DCA 1978), cert. denied, 372 So.2d 472 (Fla. 1979); Evans v. State, 140 So.2d 348 (Fla. 2d DCA 1962). Evidence which does not go toward proving or disproving an individual's ability to distinguish right from wrong at the time of an incident is irrelevant under the McNaughton Rule, including evidence of irresistable impulsive behavior, Wheeler v. State, 344 So.2d 244, 246 (Fla. 1977); Campbell, 227 So.2d at 877, evidence of diminished mental capacity, Brown, 245 So.2d at 71, or evidence of psychological abnormality short of an inability to distinguish right from wrong, Evans, 140 So.2d at 349.
The proffered testimony of the two psychologists shows that their opinions, based upon personal examination of Gurganus and the hypothetical scenario of Gurganus previously ingesting twenty-nine Fiorinal tablets and a quantity of alcohol, were that Gurganus "was not in effective control of his behavior," that he had "a mental defect," and that his judgment "would have been seriously impaired." When asked specifically about Gurganus' ability to distinguish right from wrong at the time of the offense, neither psychologist was able to state within a reasonable degree of certainty that Gurganus did or did not have that ability. The testimony of both was that there were equal probabilities of Gurganus' sanity and insanity under the McNaughten Rule. In effect, neither psychologist was able to form an opinion on the issue. We find this testimony to be of no evidentiary value because it did no more to prove Gurganus' case than it did to prove the state's case. Since it did not tend to prove or disprove the legal insanity of Gurganus, we agree with the trial court's decision to exclude the testimony on this issue as being irrelevant.
The second issue, whether the defendant's behavior at the time of the offense more closely resembled a "depraved mind" than a premeditated plan, is basically a question of the proper scope of expert testimony. During the proffer the defense had read to each psychologist a lengthy hypothetical set of facts based on both facts in the record and facts which could be inferred from the record. These facts included the assumption that Gurganus had used drugs and alcohol immediately prior to the offense. The defense attorney asked each psychologist to give his opinion as to whether Gurganus' actions were closer to a "depraved mind" than to a premeditated plan. The trial court refused to allow either psychologist to render an opinion stating that, regardless of the opinion, the testimony would not be allowed to go to the jury on the grounds that it was irrelevant and an improper infringement on an issue properly to be decided by the jury.
We recognize that:
The trial court has broad discretion in determining the range of subjects on which an expert witness may be allowed to testify, and, unless there is a clear showing of error, its decision will not be disturbed on appeal... . This discretion, however, is not boundless and expert testimony should be excluded where the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts.
Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). We find that the opinions the psychologists were asked to give in this case were not the proper subject of expert testimony. The defense was attempting to elicit a bottomline opinion as to whether the actions of Gurganus were those of a "depraved mind" or a "premeditated plan." Both of these terms are legal terms with specific legal definitions. Essentially, the defense was attempting to elicit the psychologists' opinions as to whether Gurganus committed second-degree or first-degree murder. Such a conclusion was a legal conclusion no better suited to expert opinion than to lay opinion and, as such, was an issue to be determined solely within the province of the jury. See, e.g., United States v. Milne, 487 F.2d 1232, 1235 (5th Cir.1973) (in drawing *822 distinctions between expert opinion concerning insanity and expert opinion concerning criminal capacity, court stated that "[c]riminal capacity is a legal conclusion and even an expert, medical or legal, may not speak so as to employ a legal definition"). We find that the trial court did not abuse its discretion and we uphold the trial court's exclusion of the psychologists' testimony on this basis.
On the third basis in which the testimony was not admitted as evidence, we find merit to Gurganus' argument. As discussed earlier, Gurganus intended to use the testimony as evidence of his intoxication and resulting inability to entertain a specific intent at the time of the offense. To set up the proper foundation for the expert testimony the defense questioned the psychologists on the basis of a hypothetical set of facts, the most important of which was the hypothetical fact of Gurganus' consumption of the Fiorinal capsules combined with alcohol. The record certainly contained sufficient facts from which the jury could have properly inferred Gurganus' consumption of the drugs and alcohol and, therefore, questions and opinions regarding his state of mind at the time of the offense based on such hypothetical facts were proper. See Fouts v. State, 374 So.2d 22 (Fla. 2d DCA 1979), disapproved on other grounds, Parker v. State, 408 So.2d 1037 (Fla. 1982).
It is clear that Gurganus' ability to entertain a specific intent at the time of the offense, an element required to be proved by the state, was a relevant issue pertaining to both the first-degree murder and the attempted first-degree murder charges regardless of whether the state sought conviction under either a premeditated or a felony murder theory. To convict an individual of premeditated murder the state must prove, among other things, a "fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues." Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Obviously, this element includes the requirement that the accused have the specific intent to kill at the time of the offense. E.g., Snipes v. State, 154 Fla. 262, 17 So.2d 93 (1944); Chisolm v. State, 74 Fla. 50, 76 So. 329 (1917). Likewise, specific intent to kill is also an element to be proved by the state in a charge of attempted first-degree premeditated murder. Fleming v. State, 374 So.2d 954 (Fla. 1979); Deal v. State, 359 So.2d 43 (Fla. 2d DCA 1978).
In order to prove first-degree felony murder the state need not prove premeditation or a specific intent to kill but must prove that the accused entertained the mental element required to convict on the underlying felony. Jacobs v. State, 396 So.2d 1113 (Fla. 1981), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); Adams v. State, 341 So.2d 765 (Fla. 1976), cert. denied, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 158 (1977). This is also true for attempted first-degree felony murder. The state needs to prove that the accused did intend to commit the felony. Robles v. State, 188 So.2d 789 (Fla. 1966); DeLoach v. State, 388 So.2d 31 (Fla. 3d DCA 1980). The underlying felony in the present case was attempted kidnapping. In order to convict on attempted kidnapping the state must prove the attempted kidnapping was made with the specific intent to either: 1) hold for ransom or reward or as a shield or hostage; 2) commit or facilitate commission of any felony; 3) inflict bodily harm upon or terrorize the victim or another person; or, 4) interfere with the performance of any governmental or political function. § 787.01(1)(a), Fla. Stat. (1981). It is clear that each crime for which Gurganus was convicted, whether under a premeditated or a felony-murder theory, required the state to prove beyond a reasonable doubt that Gurganus did have a specific intent at the time of the offense.
When specific intent is an element of the crime charged, evidence of voluntary intoxication, or for that matter evidence of any condition relating to the *823 accused's ability to form a specific intent, is relevant. Cirack v. State, 201 So.2d 706 (Fla. 1967); Garner v. State, 28 Fla. 113, 9 So. 835 (1891). As such it is proper for an expert to testify "as to the effect of a given quantity of intoxicants" on the accused's mind when there is sufficient evidence in the record to show or support an inference of consumption of intoxicants. Cirack, 201 So.2d at 709. In this case, after having been told to presume that Gurganus had ingested Fiorinal and alcohol the psychologists testified that Gurganus would have a lessened capability for making rational choices and directing his own behavior, he would not be in effective control of his behavior, and would have had a mental defect causing him to lose his ability to understand or reason accurately. We find these responses to be relevant to the issue of Gurganus' ability to form or entertain a specific intent at the time of the offense. Their exclusion from evidence was error.
In addition to the testimony concerning the effects of the drugs and alcohol, statements were made by the psychologists on both direct and cross-examination concerning their personal examinations of Gurganus subsequent to his arrest. Both testified that, in their opinion, Gurganus was unable to recall the events immediately surrounding the shootings and that this was one of the rare occurrences where such amnesia or inability to recall was genuine. One of the psychologists took this observation further and testified that such genuine amnesia is directly connected to the rationality or the pre-planning of the acts which are unable to be recalled later and that an individual who does act in a rational, pre-planned manner is unable to genuinely block the events from memory after the event. Regardless of the weight or truth of this testimony, we find the testimony to be relevant to the issue of Gurganus' mental capacity at the time of the offense, particularly to the element of premeditation. We hold that it was also error for the trial court to exclude this portion of the testimony.
Having determined that the trial court erred in excluding the testimony, we must decide if the error was, nevertheless, harmless. Since the improper exclusion of the psychologists' testimony deprived Gurganus of his sixth and fourteenth amendment rights to provide witnesses on his own behalf, we must evaluate the exclusion according to the harmless constitutional-error rule articulated by the United States Supreme Court. The proper test is whether there is a reasonable possibility that the lack of the evidence complained of might have contributed to the conviction or, in other words, was the error harmless beyond a reasonable doubt. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Gurganus did not present any other evidence relating to the effect of the drugs and alcohol on his state of mind at the time of the offense. There was sufficient evidence in the record on which the jury could have inferred that Gurganus did consume the intoxicants. The defense argued vigorously that Gurganus was intoxicated to the point of being unable to entertain the requisite intent at the time of the offense and the jury was instructed on the issue of voluntary intoxication as it related to the state of mind of Gurganus. After having reviewed the record as a whole, we are unable to say, although the state's evidence was substantial, that the exclusion of the testimony was harmless beyond a reasonable doubt. We find that the issues of intoxication and specific intent were crucial to Gurganus' defense and he should have been permitted to introduce this expert testimony. Therefore, we reverse all four of Gurganus' convictions and remand this case to the circuit court with instructions to grant defendant a new trial.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.