ERVIN, Judge,
concurring and dissenting.
Appellant’s appeal from his conviction of first degree premeditated murder with the imposition of a life sentence[1] raises several points for our consideration. I concur in affirming as to all except that relating to the issue contending the lower court committed reversible error in excluding appellant’s proffered evidence, submitted on the theory that the evidence was relevant to the defense that appellant’s diminished mental capacity was such as to preclude him from forming the specific intent necessary to commit first degree murder.
The victim was robbed and killed while in the company of appellant Chestnut and two other persons, Jackie Bolesta and Gary German, during a trip to look at horses Bolesta purportedly had for sale. The state’s case relied primarily upon the testimony of the accomplice German, who stated that before the crime occurred, Bolesta and appellant had discussed a plan to rob and kill the victim, Carl Brown. German’s testimony was that appellant held an ax handle over the victim while Bolesta demanded the victim’s money, and that appellant then struck Brown across the forehead, resulting in Brown’s surrender of his money, whereupon appellant and Bolesta, who was armed with a machete, took Brown down the road and there murdered him. Following the murder, German and appellant took the body into the woods and concealed it. Appellant drove the victim’s truck to Ocala, where it was left at a motel. Then all three disposed of the machete, the ax handle and the victim’s bloody T-shirt.
In a statement made to Investigator Lentz of the Alachua County Shei'iff’s Department, appellant admitted that he was aware that Bolesta had planned to rob the victim, but he denied any knowledge of a planned murder, stating that it was Boles-ta — not he — who hit Brown on the head with the ax handle, and robbed and murdered him. While denying any role in the robbery or killing, Chestnut admitted that at Bolesta’s order he dragged Brown’s body into the woods and there covered it.
Chestnut took the stand as the only defense witness, and related the events as Investigator Lentz had stated them; however he denied any prior discussion with Bolesta as to the robbery of Brown or any other illegal activity. He stated that following the murder of Brown by Bolesta, Bolesta threatened to kill him if he did not help conceal the body, or did not drive the victim’s truck to Ocala. Under cross-examination, Chestnut admitted discussing with Bolesta a plan to rob Brown, but he stated that he never agreed to participate. In conflict with Investigator Lentz’s testimony, he denied that he had not said anything *1353 in his statement of threats made by Bolesta to him.
Following arguments by counsel, the jury was generally instructed on the offenses of premeditated first degree murder, first degree felony-murder, second degree murder, second degree felony-murder, and manslaughter. The underlying felony of robbery was also defined in regard to the felony-murder instruction. Over defense objection, the court declined to submit to the jury a special verdict form involving felony-murder. The jury then returned a guilty verdict of first degree murder.
Prior to trial the state filed a motion in limine, seeking to restrict the anticipated testimony of certain witnesses, particularly that of Dr. Harry Krop, a psychologist, who, the state alleged, would testify as to appellant’s having a mental condition less than that recognized in the McNaughton rule; therefore, the state contended, any such testimony would be improper. Additionally the motion recited that the state believed that other witnesses would testify regarding the general reputation for violence of the co-defendant, Joseph Bolesta, as well as Chestnut’s general fear of the co-defendant, which testimony, it was contended, should be excluded in that it related to the improper defense of duress.
In response to the state’s motion in li-mine, appellant moved to have the court determine the admissibility of certain defense evidence, arguing that because the state appeared to be intent on pursuing its theory of felony-murder, in addition to that of premeditated murder, the defense of duress or coercion was an appropriate defense to murder in the first degree. The motion continued that while such testimony does not reach the issue of legal incapacity under the McNaughton standard, it is consistent with the defendant’s theory of defense.
In its order granting the state’s motion in limine, the court ruled that the proposed testimony of the expert defense witnesses, Drs. Krop and Valenstein, would be excluded, because neither would be able to state that appellant meets the McNaughton test for insanity. The court observed that “absent an insanity plea, expert testimony as to mental status, especially when offered to bolster an affirmative defense would be improper in and of itself since it would only tend to confuse the jury.” The court also excluded the testimony of other witnesses who would testify regarding the violent reputation of the co-defendant, Joseph Bolesta, on the ground that none of them had heard a specific threat made to Chestnut, nor had Chestnut ever claimed that Bolesta made any threat to him prior to the homicide. Finally the court ruled that the reputation evidence of Bolesta for violence was inadmissible on the ground that duress is not a defense to a homicide case, and that one cannot justify the taking of the life of an innocent person because of a threat.
Following the court’s ruling, the defense submitted a proffer of the excluded evidence. The proffered testimony of Dr. Krop related that appellant has marginal intelligence in the lowest five percent of the general population; that he suffers from brain damage and diminished mental capacity, with some moderate impairment of verbal memory; and that he has a passive personality causing him to avoid physical confrontation, with the result that he is easily led and manipulated. The proffer also recounted an incident that occurred several years before during which appellant suffered a fractured skull and probable brain damage after being kicked in the head by a bull. The injury caused a post-traumatic seizure disorder, requiring that appellant be placed on medication in order to prevent the seizures from recurring. Dr. Krop concluded with the comment that appellant’s profile was characteristic of a distress syndrome, typical of individuals who tend to be dependent and who have an exaggerated need for affection; that his responses to questions indicate that he customarily deals with conflicts in a passive and dependent manner; that he is easily influenced by others and, when confronted, generally conforms or withdraws.
Dr. Valenstein, a neurologist at Shands Hospital, reviewed the results of an exami *1354 nation conducted on Chestnut following his skull fracture. According to Dr. Valen-stein, the incident caused appellant to suffer brain damage. In his opinion this type of injury frequently causes personality change, resulting in the patient being easily influenced by others.
The defense proffered also the testimony of a number of witnesses whose testimony would be relevant to both appellant’s duress and diminished mental responsibility defenses. As to the former theory, most of the witnesses’ testimony would relate to the violent reputation of Bolesta in the community in which he resided. As to the latter defense, the witnesses’ testimony generally pertained to their knowledge of the head injury suffered by Chestnut and his resulting diminished mental capacity.
Initially, I am in accord with the lower court’s conclusion that the proposed evidence pertaining to appellant’s defense of duress should be excluded, because duress is inapplicable to the facts involved in the case at bar. Although Florida case law has recognized that the common law defense of duress is a proper defense to certain crimes, see Hall v. State, 136 Fla. 644, 187 So. 392 (1939) (penury); Koontz v. State, 204 So.2d 224 (Fla. 2d DCA 1967) (attempted robbery), the cases also agree that the defense is ordinarily not available to one charged with homicide or attempted homicide. See Cawthon v. State, 382 So.2d 796 (Fla. 1st DCA 1980); Wright v. State, 402 So.2d 493, 498 (Fla. 3d DCA 1981). The Wright opinion, however, left the question open in cases wherein duress is raised as a defense to first degree murder, when prosecuted under a felony-murder theory. Under such circumstances, the court acknowledged that “a different question is presented, since duress is a recognized defense to the underlying felony, and the rationale of the rule prohibiting the duress defense in the crime of homicide appears inapplicable.” Id. at 498-499, n. 8. Wright did not address the question of the defense’s applicability to felony-murder, in that the defendant there was charged with and defended against first degree murder by premeditated design.
In the present case, although the state charged appellant with premeditated first degree murder, it also argued appellant’s guilt under the theory of felony-murder, and in fact the state secured from the lower court an instruction to the jury as to such offense. Nevertheless, I see no need to decide whether the defense of duress is applicable to the offense of felony-murder, because appellant did not establish, as a precondition to the admissibility of such defense, that the danger to him was either imminent or impending. The defense of duress is narrowly circumscribed: It is required to be of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the defendant does not commit the crime; moreover the threat of danger must be continuous with no reasonable opportunity to escape from the compulsion. Koontz v. State.
The facts in the present case do not fit within the parameters of the above rule. Appellant admitted during cross-examination that he had been aware for some time before the murder of Brown of Bolesta’s intention to rob Brown; yet he failed to report this information to the authorities. More importantly there is nothing in the testimony of appellant disclosing that Bolesta made any threats to him preceding the homicide. In fact, all of the threats that Bolesta directed to him occurred following the homicide. In that the evidence of any danger immediately preceding the crime is not apparent from the record, I would affirm the lower court’s ruling excluding appellant’s proffered evidence as it relates to the defense of duress.
On the other hand, evidence pertaining to the defense of diminished mental responsibility to a crime involving, as one of its essential elements, a special intent is, in my judgment, relevant, notwithstanding that such evidence would not be relevant under the McNaughton test for insanity. Appellant’s insanity at the time of the offense was not an issue for the jury’s consideration in that Dr. Krop’s evaluation of appellant revealed that he was aware of his actions at the time of the incident and the consequences which may have followed it, *1355 and that he was then competent to stand trial. The purpose of Dr. Krop’s proposed testimony was, however, not solely offered to establish appellant’s mental competency at the time of the offense, but was submitted in part to support the defense’s theory that because of appellant’s diminished mental faculties, he did not possess the specific intent necessary to carry out the crime for which he was charged.
The lower court’s ruling excluding such evidence, until very recently, found unanimous support among Florida cases holding that evidence of an abnormal mental condition, less than that required by the McNaughton standard, is not relevant as a defense to a crime requiring a specific intent for its commission. See, e.g., Everett v. State, 97 So.2d 241 (Fla.1957); Ezzell v. State, 88 So.2d 280 (Fla.1956); Bradshaw v. State, 353 So.2d 188 (Fla. 2d DCA 1977); Tremain v. State, 336 So.2d 705 (Fla. 4th DCA 1976). In so deciding, the above cases appear to have aligned themselves with courts in other jurisdictions that hold the scope of the rule of inadmissibility encompasses not only insanity, but is an “all- or-nothing” proposition in the sense that the defendant must either establish insanity as a complete defense or excuse for the crime, or be held to full responsibility for the offense charged. See Annotation, 22 ALR 3d 1228, 1236 (1968). A number of other jurisdictions have, however, adopted the theory of diminished responsibility, which permits evidence of an abnormal mental condition not constituting legal insanity, under the view that since certain crimes by definition require the existence of a specific intent, evidence that is relevant for the purpose of negativing such intent is admissible in order to establish that in fact a lesser degree of the offense was committed. Id. at 1238.
The anomalous result in Florida prosecutions was that although a defendant, faced with an offense involving a specific intent, was permitted to present evidence of his voluntary intoxication with the objective of establishing that his mental condition at the time of the offense was such as to impair his ability to form the intent necessary to commit such crime, Gamer v. State, 28 Fla. 113, 9 So. 835 (1891), he was otherwise barred from presenting evidence of an abnormal mental condition less than that meeting the test for legal insanity, even though such evidence was offered for the same purpose as in cases involving the defense of voluntary intoxication: to negate the specific intent required for the offense’s commission. The illogical inconsistency of a rule which would allow such evidence in certain cases, yet deny it in others, is well exemplified by the following language from an opinion of the United States Court of Appeals for the District of Columbia Circuit:
Neither logic nor justice can tolerate a jurisprudence that defines the elements of an offense as requiring a mental state such that one defendant can properly argue that his voluntary drunkenness removed his capacity to form the specific intent but another defendant is inhibited from a submission of his contention that an abnormal mental condition, for which he was in no way responsible, negated his capacity to form a particular specific intent, even though the condition did not exonerate him from all criminal responsibility.
United States v. Brawner, 471 F.2d 969, 999 (D.C.Cir.1972).
In my judgment a defendant in this state now has the right to present evidence showing that his diminished mental capacity was such that it precluded him from forming the essential intent required for the commission of a special intent offense. In Gurganus v. State, 451 So.2d 817 (Fla.1984), the Florida Supreme Court held that the trial court erred in excluding the proffered testimony of two psychologists into evidence, which was offered to show that the defendant lacked the necessary intent to commit first degree murder. Although the defendant’s diminished mental responsibility there was caused by his excessive consumption of barbiturates and alcohol, certain language in the court’s opinion suggests that the defense is not confined solely to that of intoxication. The court stated that it was the state’s burden to establish the requisite specific intent, regardless of *1356 whether the state sought conviction under either a premeditated murder or felony murder theory, in that both theories required proof of a specific intent. The court concluded with the following words: “When specific intent is an element of the crime charged, evidence of voluntary intoxication, or for that matter evidence of any condition relating to the accused’s ability to form a specific intent, is relevant.” Id. at 822-823 (emphasis supplied).
I can only conclude from the above statement that the Florida Supreme Court has now implicitly overruled its former opinions, ie., Ezzell v. State and Everett v. State, holding that evidence of an abnormal mental condition, not constituting legal insanity, may not be considered by the trier of fact for any purpose. In the present case the proffered testimony of Dr. Krop, a psychologist, and Dr. Yalenstein, a neurologist, pertaining to defendant’s skull fracture and resulting brain damage, was in my judgment relevant to the issue of whether appellant possessed a specific intent to commit either premeditated murder or to commit the underlying felony of robbery, which is a specific intent crime. See Bell v. State, 394 So.2d 979, 980 (Fla.1981) (larceny, an essential element of robbery, has traditionally been held to require specific intent, despite the absence of an expressed statutory directive). The testimony of lay witnesses in the case at bar offered for such purpose was also relevant.[2]
The state’s brief suggests that even if such evidence would be otherwise admissible, the court did not err because appellant denied at trial ever having done any of the acts for which he was charged, hence the proffered testimony relating to his diminished mental responsibility is inconsistent with the defense submitted at trial. The state’s argument, however, overlooks this court’s recent opinion in Pope v. State, 458 So.2d 327 (Fla. 1st DCA 1984) (on rehearing ), wherein the state had contended that because the defendant’s evidence of voluntary intoxication was inconsistent with other testimony by him denying the commission of the offense, the lower court’s refusal to give a jury instruction on voluntary intoxication should be sustained. In rejecting the state’s inconsistent defenses argument, this court, speaking through Judge Wigginton, observed that “the defense was premised simply on a general plea of not guilty and the incomplete defense of voluntary intoxication. A plea of not guilty should not preclude the defense of voluntary intoxication anymore than it precludes a defense of entrapment.” 458 So.2d at 329.
Similarly, appellant in the case at bar submitted a general plea of not guilty and an attempted defense of diminished mental responsibility. If his alternative defenses have relevant value, Pope instructs that a defendant may not be precluded from advancing them simply because they lack consistency. As in Gurganus v. State, the improper exclusion of the proffered testimony relating to appellant’s diminished mental responsibility deprived him of his Sixth and Fourteenth Amendment rights to be provided witnesses in his behalf. Accordingly, the error below requires reversal and a remand of the case for new trial.
Because, however, the Florida Supreme Court has not explicitly overruled its prior opinions precluding the admissibility of evidence not meeting the test of legal insanity as a defense to a specific intent crime, I would submit the following question to it as one of great public importance:
IS EVIDENCE OF AN ABNORMAL MENTAL CONDITION NOT CONSTITUTING LEGAL INSANITY ADMISSIBLE FOR THE PURPOSE OF PROVING EITHER THAT THE ACCUSED COULD NOT OR DID NOT ENTERTAIN THE SPECIFIC INTENT OR STATE OF MIND ESSENTIAL TO PROOF OF THE OFFENSE, IN ORDER TO DETERMINE WHETHER THE CRIME CHARGED, OR A LESSER DEGREE THEREOF, WAS IN FACT COMMITTED?

. The state did not seek the death penalty.

. By analogy a lay witness may offer an opinion regarding the mental competency of a defendant, provided the opinion is based upon personal knowledge or observation. Rivers v. State, 458 So.2d 762, 765 (Fla.1984); Jones v. State, 465 So.2d 1330, 1331 (Fla. 3d DCA 1985).