585 So.2d 1056 (1991)
Jens Peter HANSEN, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2136.
District Court of Appeal of Florida, First District.
September 4, 1991.
Rehearing Denied October 14, 1991.
*1057 Nancy A. Daniels, Public Defender, David A. Davis, Assistant Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Edward C. Hill, Jr., Asst. Atty. Gen., for appellee.
KAHN, Judge.
Hansen appeals his conviction and sentence for first degree murder and burglary of a structure. We affirm the conviction and life sentence.
At trial the state presented ample evidence that Hansen, a University of Florida graduate student, murdered his major professor, Dr. Arthur Kimura, and that the murder was perpetrated with elaborate and detailed forethought and planning. The defense relied exclusively upon the insanity defense. Each of the three defense experts essentially stated that Hansen was insane because he suffered from a paranoid delusion rendering him unable to know that it was morally wrong to kill Dr. Kimura. Each such expert admitted, however, that Hansen understood it was legally wrong to commit this act.
The position taken by Hansen certainly strained the test in this state for legal insanity, commonly referred to as the M'Naughton rule. Moral insanity is not a defense to criminal acts in Florida. Gurganus v. State, 451 So.2d 817 (Fla. 1984); Evans v. State, 140 So.2d 348 (Fla. 2d DCA 1962). Hansen now complains that the trial *1058 judge made several erroneous evidentiary rulings.[1]
From our perspective, the trial judge did an admirable job of allowing Hansen to fully present his theory of defense.[2] A trial court has a great deal of discretion in admitting or refusing to admit evidence. Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). A court's exercise of this discretion will not be reversed on appeal unless it is abused. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982).
Hansen has not established that the trial court abused its discretion by allowing the prosecutor to inquire of four professors whether during their course of dealings with appellant they "observed anything" about Hansen to indicate he was suffering from a mental disease or condition. Each of the four professors responded in the negative. The judge properly overruled defense objections to "opinion", "predicate", and "qualification." Fairly construed, the questions inquired about observations of Hansen's behavior rather than an opinion as to his sanity. To the extent the questions called for lay opinion testimony about mental condition, they were not improper. Garron v. State, 528 So.2d 353 (Fla. 1988); Rivers v. State, 458 So.2d 762 (Fla. 1984). Nonexperts may testify as to a defendant's mental condition based on personal knowledge of the defendant gained in a time period reasonably proximate to the events giving rise to the prosecution. Id.
During the defense case, the judge allowed Hansen's wife to describe Hansen's deteriorating condition. Over the state's objection the judge permitted Mrs. Hansen to testify that in her opinion appellant suffered from a mental condition. The judge then sustained an objection to the following question:
Mrs. Hansen, do you have an opinion as to whether Jens Hansen knew the consequences of his actions on September 1, 1989?
The trial court correctly ruled that while a proper lay witness may testify regarding mental condition, the question of whether a defendant knew the consequences of an act is not appropriate under Garron and Rivers. Hansen cites no case that would allow lay testimony on such a fine aspect of the insanity defense.[3] While Garron and Rivers allow, under certain specified circumstances, lay opinion as to "sanity," it does not follow that a witness may testify to purely legal conclusions. The value of lay opinion as to sanity lies in the ability of the witness to effectively convey her impressions of the defendant's behavior. See § 90.701(1), Fla. Stat. (1989) (lay opinion is proper where "[t]he witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party." (emphasis supplied)). We cannot agree that lay testimony on the ultimate fact of whether a defendant can distinguish right from wrong is an appropriate *1059 means for a witness to convey "what he has perceived" to the jury.
We next observe that the trial court did not commit reversible error in overruling defense objections to the state's cross-examination of appellant's expert witnesses. The state utilized questions designed to clarify each expert's testimony regarding Hansen's ability to distinguish right from wrong. Appellant's mental health experts had already testified that he knew it was legally wrong to kill Dr. Kimura. The objected-to question rather graphically pointed out that already conceded fact.[4]
Finally, appellant contends that the court erred in ruling on the admissibility of his wife's testimony about statements made by him and her impression of those statements. The state objected to the testimony on the grounds that it was irrelevant and self-serving.[5] The court found that although the statements could be relevant to the defense of mental illness, they were self-serving. The trial court erred in excluding the testimony. The statements are not self-serving hearsay because the wife's statements about her impression of Hansen's statements were not hearsay and her testimony as to the statements made by her husband was not offered to show the truth of the matter asserted. See Downs v. State, 574 So.2d 1095 (Fla. 1991). As in Downs, however, the exclusion of the testimony constituted harmless error in light of the wife's testimony regarding her perception of appellant's mental condition and her observations of the change in his behavior. Appellant's medical experts also testified concerning his mental condition.
The record compels us to conclude that Hansen received a fair trial. The trial judge quite effectively monitored the presentation of evidence on the critical fact issue, Hansen's sanity. Accordingly, and upon thorough review of the issues raised, we affirm.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] Appellant's points concerning the sufficiency of evidence of premeditation and his presence at jury selection have been considered and do not merit discussion.
[2] The state argues on cross appeal that appellant's expert testimony offered under the "guise" of M'Naughton so deviated from the legal requirements of the insanity defense, the court should have stricken it under Hall v. State, 568 So.2d 882 (Fla. 1990) ("Expert testimony that a defendant suffered from a mental infirmity, disease, or defect without concluding that, as a result, the defendant could not distinguish right from wrong is irrelevant." 568 So.2d at 885). In light of our disposition of this appeal, we need not reach the state's contention.
[3] While arguably the court's refusal to allow Mrs. Hansen's opinion of her husband's "sanity," in response to another question, was error, it was harmless. The judge allowed her to testify as to her belief that Hansen suffered from a mental condition, to describe the basis of her opinion, and to explain the changes she had observed in appellant's behavior. Moreover, appellant's three medical experts testified that Hansen was insane.
[4] The state's question asked essentially whether Hansen would have killed Dr. Kimura had there been a police officer present, prepared to arrest the killer.
[5] We have not overlooked the state's contention that appellant failed to proffer the excluded evidence. While ordinarily an adversely affected party must make a proffer of excluded evidence, a proffer is unnecessary where the substance of the excluded testimony is apparent from the context within which it was offered. Reaves v. State, 531 So.2d 401 (Fla. 5th DCA 1988). Here, the record is sufficient for us to rule on the propriety of the trial court's exclusion of the testimony.