837 So.2d 1044 (2002)
Jacquiline Nicole REYNOLDS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-468.
District Court of Appeal of Florida, Fourth District.
December 26, 2002.
*1045 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Richard E. Doran, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, Jacquiline Nicole Reynolds, was indicted for first degree murder in the *1046 death of her adoptive mother. The jury rejected appellant's insanity defense and found her guilty of a lesser included offense, second degree murder with a weapon.[1] She appeals her conviction, contending that the trial court erred in precluding defense experts from testifying on the ultimate issue of insanity and in repeatedly criticizing defense counsel and disparaging appellant's insanity defense. For the reasons discussed below, we affirm.
On May 14, 1997, seventeen-year-old Jacquiline Nicole Reynolds called 911 from her home in Coral Springs and told the operator that she had just stabbed her mother to death. When the police arrived at her house, they found her mother, Billie Jean Reynolds, on the floor of the family room. She was dead due to multiple stab wounds. Reynolds was arrested and taken to jail. During her interview with police detectives, Reynolds confessed to stabbing her mother and described the events that led up to her actions. She told the officers that she was upset because she had broken up with her boyfriend. She had planned to kill her boyfriend at school that day, but after finding out that her parents were not taking her back to school until she attended counseling sessions, she decided instead to kill her parents first. Then she could drive herself to school the following day and kill her boyfriend.
That evening, after her father left home for church, she approached her mother from behind as she worked at her computer and tried to slash her throat with a large butcher knife. She repeatedly stabbed her mother until she fell on the floor. After trying to wash the knife in the sink, she called the police. Near the end of her interview with detectives, appellant told the officers that she had taken four or five handfuls of aspirin that afternoon. Appellant was taken to the hospital.
At trial, appellant's defense to the charge of premeditated murder was insanity. In support of that defense, she called two expert witnesses who gave opinions that appellant suffered from mental disease and therefore did not know right from wrong at the time of the killing. However, in a pre-trial ruling, the trial court prevented her experts from stating their opinions that appellant was insane. The court similarly precluded the state's experts from testifying that appellant was sane at the time of the killing. Relying on Gurganus v. State, 451 So.2d 817 (Fla. 1984), the trial judge reasoned that expert testimony regarding insanity constitutes a legal conclusion and decided that "an expert's opinion cannot be in the ultimate statement that the defendant is or is not legally insane at the time." In setting parameters on the expert opinion testimony, the court further stated:
I think they can render an opinion as to the instruction, what is, in other words, the legal definition of insanity and in their opinion whether the defendant had a mental infirmity, disease or defect and because of that she did not know what she was doing or its consequences or although she knew what she was doing and its consequences she did not know it was wrong. In other words, they can render an opinion on that, but they cannot render an opinion that the defendant was legally insane.
Florida law, however, expressly provides that an expert witness may render an opinion on the ultimate issue in a case. Section 90.703, Florida Statutes (1999) states:

*1047 Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.
Further, Gurganus does not hold that an expert opinion concerning insanity is inadmissible as a legal conclusion.
In Gurganus, the defendant was charged with first-degree murder in the shooting death of his ex-wife and a customer at a convenience store where she worked. The defense proffered the testimony of two clinical psychologists concerning the combined effect of defendant's ingestion of twenty-nine Fiorinal capsules and alcohol prior to the shootings. Upholding the trial judge's refusal to allow this testimony on relevancy grounds, the supreme court re-affirmed that evidence of a defendant's diminished mental capacity which fell short of rendering him unable to know right from wrong or appreciate the consequences of his act is not admissible because it is irrelevant on the issue of insanity. Gurganus, 451 So.2d at 821. The court further held that an expert's opinion as to whether a defendant's mental condition was closer to a depraved mind than to premeditation was not admissible either, because that determination was not a proper subject of expert testimony:
Both of these terms are legal terms with specific legal definitions. Essentially, the defense was attempting to elicit the psychologists' opinion as to whether Gurganus committed second-degree or first-degree murder. Such a conclusion was a legal conclusion no better suited to expert opinion than to lay opinion and, as such, was an issue to be determined solely within the province of the jury.
Id.
The Gurganus court went on to cite United States v. Milne, 487 F.2d 1232 (5th Cir.1973), which drew a distinction between expert opinion regarding insanity and expert opinion concerning criminal capacity. "Criminal capacity is a legal conclusion and even an expert, medical or legal, may not speak so as to employ a legal definition." Milne, 487 F.2d at 1235. In so distinguishing testimony about a defendant's mental capacity from testimony regarding the defendant's sanity, Milne indicated that the latter is admissible. Id. at 1235-36. It thus appears that the trial court misconstrued Gurganus in preventing the expert witnesses from testifying that appellant was sane or insane at the time of the offense.
Florida courts have previously allowed properly qualified experts to testify as to whether the defendant was or was not sane at the time of the crime. See Garron v. State, 528 So.2d 353, 355 (Fla.1988)(noting that all three court-appointed psychiatrists testified "that appellant did not know right from wrong and was, therefore, insane under the legal definition of insanity"); see also Slawson v. State, 796 So.2d 491, 498 n. 5 (Fla.2001)(acknowledging that both court appointed experts agreed that the defendant did not meet Florida's test for insanity at the time of the crime); cf. Nowitzke v. State, 572 So.2d 1346, 1355 (Fla.1990)(holding testimony to be improper in light of doctor's lack of knowledge of the legal definition of insanity).
The state asserts that appellant failed to preserve this issue for appellate review because she did not object to this limitation on expert testimony. See J.B. v. State, 705 So.2d 1376, 1378 (Fla.1998)(stating that except in cases involving fundamental error, "to raise an error on appeal, a contemporaneous objection must be made at the trial level when the alleged error occurred"). The record shows, however, that during the pre-trial discussion regarding preliminary jury instructions on insanity, the court asked whether there *1048 were any objections to his proposed restrictions and defense counsel responded: "I only ask we be permitted to have our experts render an opinion that include that in their expert opinion the defendant was insane." The record does not reflect that defense counsel withdrew his objection or agreed to the ruling after the court clarified that the limitation on expert testimony would apply equally to both parties.
We conclude that the trial court erred in precluding the defense experts from stating their ultimate opinion that appellant was "insane." However, we determine that in this case such error was harmless as the experts were permitted to fully explore and render opinions on whether appellant met Florida's test of insanity. In Florida, courts follow the M'Naughton Rule for determining whether a defendant was insane at the time of the crime. Gurganus, 451 So.2d at 820. Under M'Naughton, an accused is not criminally responsible for his actions if, at the time of the offense, the defendant, by reason of a mental disease or defect, (1) does not know of the nature or consequences of his act; or (2) is unable to distinguish right from wrong. Id.
In this case, one defense expert testified that appellant was suffering from major depression and borderline personality disorder, both of which were mental diseases or defects, at the time of the offense. The expert concluded that as a result of those diseases or defects, appellant slipped into a psychotic-like mental state which rendered her mental condition so impaired that, although she knew what she was doing and its consequences, she did not appreciate the wrongfulness of her actions at that time.
Another expert testified that as a result of appellant's mental disease, she did not know right from wrong at the time of the crime and may not have understood what she was doing or its consequences. In light of the expert evidence presented on the elements comprising Florida's definition of insanity, coupled with the court's jury instructions tracking this definition of insanity, and based on our review of the record as a whole, we find that there is no reasonable possibility that the error affected appellant's conviction for second-degree murder. See Goodwin v. State, 751 So.2d 537 (Fla.2000)(re-affirming the harmless error analysis to be applied in deciding whether an error requires reversal).
Appellant also complains that the trial court prevented her from exploring whether a state's expert witness accurately understood the legal test for insanity. Appellant sought to challenge the psychologist's testimony which suggested that appellant did not meet the test for insanity unless she suffered from a "major" mental disease or defect. The record shows, however, that, following a side bar conference, defense counsel was allowed to continue his line of questioning regarding discrepancies between the M'Naughton insanity test and the test utilized by the witness. We therefore find no error on that point.
Finally, appellant asserts that the trial court continuously interrupted and admonished defense counsel during trial, thereby disparaging her insanity defense. However, as appellant concedes, her trial counsel never objected to any of these comments or alleged improprieties. Thus, to overcome a procedural bar to appellate review, the errors complained of must be fundamental. J.B., 705 So.2d at 1378. "For an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process." Randall v. State, 760 So.2d 892, 901 (Fla.2000). It is error that "`reach[es] down into the validity of the trial itself to the extent that *1049 a verdict of guilty could not have been obtained without the assistance of the alleged error.'" State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)(quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)).
Determining the existence of fundamental error requires an examination of the entire record as a whole. See Crump v. State, 622 So.2d 963, 972 (Fla.1993). In examining the record as a whole, we first note that most of the comments referenced by appellant occurred outside of the presence of the jury. Second, we find that those comments which were made in front of the jury were not so prejudicial to appellant or her defense as to result in a denial of due process. When considered in the context of the entire trial, the judge's comments and conduct do not constitute fundamental error.
Accordingly, we affirm appellant's conviction and sentence.
AFFIRMED.
HAZOURI and MAY, JJ., concur.
NOTES
[1] Appellant's first jury trial ended in a mistrial when the jury was unable to reach a verdict.