ON MOTION FOR REHEARING AND MOTION FOR REHEARING EN BANC
 

 PER CURIAM.
 

 We deny Appellant’s Motion for Rehearing and Motion for Rehearing
 
 En Banc
 
 from this court’s affirmance of the summary denial of appellant’s Florida Rule of Criminal Procedure 3.850 motion.
 

 In December 2004, Michael Roman pleaded guilty to five counts of first-degree murder. In exchange, the state agreed not to seek the death penalty. In June 2006, Roman filed his postconviction motion, and in November 2006, he filed an “Addendum” which raised an additional claim. In his motion, Roman sought to withdraw his plea.
 
 [1]
 

 In his first claim, appellant argued that counsel was ineffective in failing to investigate alleged due process violations in the manner in which an arrest affidavit issued. This claim is an improper attempt to go behind the plea and raise an issue that was known to Roman at the time he entered the plea.
 
 See Stano v. State,
 
 520 So.2d 278 (Fla.1988) (holding that convicted murderer, sentenced to death, could not go behind his plea by alleging that counsel should have investigated more because entry of the plea cuts off inquiry into all that precedes it).
 

 Roman identified no deficiency in counsel’s performance, and even if he had, he failed to show a reasonable probability that but for counsel’s alleged deficiency he would not have entered a plea and would have insisted on going to trial.
 
 Hill v. Lockhart,
 
 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
 

 Further, on the merits, we are not persuaded by Roman’s argument as the arrest affidavit that issued for a violation of probation was proper in this case. Authorities received information that Roman, who was on probation and supposed to be residing in Lake Worth, Florida, was in Orlando, Florida, and had confessed to killing five people. Roman claimed that an arrest warrant for a violation of probation could not issue unless the state verified that he was in Orlando. After receiving the report, police began surveillance on the residence where Roman was located in Orlando. The arrest warrant on the violation of probation properly issued for Roman’s unauthorized travel, and he was lawfully arrested while in Orlando. Subsequent police questioning regarding the murders was not unauthorized.
 

 Roman argued in a second claim that counsel failed to adequately inform him regarding an insanity defense and pressured him to waive an insanity defense. Roman expressly waived any insanity claim on the record during the plea colloquy. Further, the state explained that it would present evidence that would refute any insanity claim in this case.
 

 Roman detailed the murders in two confessions to police. One of the victims was
 
 *301
 
 shot in the head and found sitting in the passenger seat of a pickup truck which had been covered with a tarp. Roman admitted covering the truck with the tarp after shooting this victim. He explained how he stole the gun which he used in some of the murders from an apartment in Orlando and then drove down to Lake Worth in order to kill the victims. Roman told police that he test fired the gun on 1-95 on his way to kill the victims. Upon returning to Orange County after the murders, Roman admitted hiding the gun in his girlfriend’s purse.
 

 Inside the home where three of the victims were located, police found a note that Roman had written which stated that he had been at the house earlier in the day, that no one was home, and that he removed some of his personal belongings before going to Miami. Roman confessed that he wrote this note pretending to be worried about the family and acting as if he did not know what was going on.
 

 One of the victims was found inside a locked closet covered with clothing. Two of the female victims (one of whom was pregnant) were found in the closet of the middle bedroom. These bodies had been covered up by some bedding. Roman confessed to hiding the bodies in the closets and covering them. The pregnant victim had her hands bound in front of her and her throat had been slashed. The other victims at the residence had been shot in the head. The fifth victim was found lying in the street nearby.
 

 Roman stated that he killed the victims one by one because they had allegedly laughed when he confronted them about one of the victims allegedly molesting Roman’s six-year-old stepdaughter. Roman also believed that the victim found shot in the pickup truck had molested his eighteen-month-old daughter. Roman explained that the victim found in the street jumped out of the van after he shot at her. He stated that both these victims had acknowledged the sexual abuse of his daughters before he killed them. After the state had completed reciting the grisly factual basis for the pleas, Roman acknowledged under oath that he was pleading guilty because these facts were true.
 

 Roman understood the consequences of his actions and knew what he was doing was wrong as evidenced by his premeditation and attempts to conceal the crime after the fact.
 
 See Reynolds v.
 
 State, 837 So.2d 1044, 1048 (Fla. 4th DCA 2002) (explaining that Florida’s test for insanity is the
 
 M’Naughton
 
 Rule which provides that a defendant is not criminally responsible for his actions if at the time of the offense, by reason of mental disease or defect, the defendant: (1) did not know of the nature of the consequences of his act; or (2) is unable to distinguish right from wrong).
 

 Considering the overwhelming weight of the evidence refuting any insanity defense, Roman cannot establish that he had a valid insanity defense in this case. After driving down from Orlando, test firing the weapon, and slaughtering this family, Roman hid the bodies and took measured and deliberate steps to try and conceal the murders and set up an alibi for himself. He then drove back up to Orlando and hid the murder weapon. Clearly, Roman understood the consequences of his conduct and appreciated its criminality. He took the time to write a note which he thought would clear him of any involvement. An insanity defense was not a reasonable option as this was a cold, calculated mass murder that Roman planned and attempted to conceal. Roman admitted bringing extra bullets with him and stated that, if he had to kill them again, he would.
 

 Under these circumstances, counsel was not ineffective in advising Roman to waive any potential insanity defense and enter a
 
 *302
 
 guilty plea in order to avoid the death penalty.
 
 See Florida v. Nixon,
 
 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004).
 

 Finally, Roman argues that the trial court failed to address the “Addendum” which he filed before the court had ruled on his motion. While Roman may be correct that the trial court did not address the issue raised therein, we have reviewed the Addendum, and Roman fails to establish reversible error.
 

 The Addendum argued that the confessions in this case were improper because the Miranda,
 
 [2]
 
 warnings used by police were allegedly insufficient.
 
 See Roberts v. State,
 
 874 So.2d 1225 (Fla. 4th DCA 2004). The record reveals, however, that Roman was properly advised prior to both confessions of the right to have counsel present during questioning and the right to consult with counsel before any questioning. Because this claim is conclusively refuted, Roman fails to establish reversible error in the trial court failing to address the Addendum. Any error is harmless.
 

 POLEN, FARMER and MAY, JJ., concur.
 

 [1]
 

 . Appellant should be made aware that, if he were permitted to withdraw his plea, the state could seek the death penalty against him.
 

 [2]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).