994 So.2d 447 (2008)
Walter Lee WRIGHT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-3144.
District Court of Appeal of Florida, Third District.
October 29, 2008.
Rehearing Denied November 25, 2008.
*448 Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Ansley B. Peacock, Assistant Attorney General, for appellee.
Before GERSTEN, C.J., and COPE and SALTER, JJ.
GERSTEN, C.J.
Walter Lee Wright ("Wright") appeals from his judgment and sentence, claiming the trial court erred in excluding expert testimony. We affirm.
The State charged and tried Wright for first-degree murder, armed burglary, armed robbery, and attempted carjacking. Wright's defense was based on insanity. Prior to trial, several doctors evaluated Wright to determine whether he was: (1) competent to stand trial, (2) competent to waive his Miranda rights, and (3) legally insane at the time of the crimes.
Before the defense began to try its case-in-chief, the State argued that Wright should be foreclosed from presenting witnesses not disclosed during discovery or listed on the defense trial witness list. After conducting an inquiry, the trial court excluded two expert witnesses, Dr. Ainsley and Dr. Ruiz. The trial proceeded, and the jury convicted Wright as charged. Wright appeals the exclusion of the two witnesses.
Wright contends that the trial court erred in excluding the witnesses without performing an inquiry pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971). Specifically, Wright posits that the trial court did not inquire into the prejudice, if any, to the prosecution, and did not explore alternative and less severe sanctions. The State asserts, inter alia, that the error, if any, in excluding the witness was harmless. We agree with the State.
In reviewing the exclusion of defense evidence, we "must determine whether the erroneously excluded evidence could have had an effect on the jury favorable to the defendant, or, in other words, could the improper exclusion have reasonably affected the outcome of the case." Johnson v. State, 728 So.2d 1204, 1205 (Fla. 3d DCA 1999). Here, Wright contends the two excluded expert witnesses would have testified that Wright was insane at the time he committed the charged crimes. Therefore, we must determine what effect, if any, this testimony would have had on the jury.
*449 After careful review of the full record, we find that there was sufficient evidence presented on the issue of whether Wright was insane or not. In fact, two witnesses testified for the defense on this issue. The first witness, Dr. Frumkin, testified concerning his opinion of Wright's mental state before, during, and after the commission of the crimes. When describing Wright's condition during police interrogation, Dr. Frumkin stated that Wright "was in a highly psychotic delusional state." He further explained that psychosis "means that the person has poor reality testing and you don't know what's real and what's not real, they're not able to distinguish reality." When later asked if he believed Wright was in the same state "before the incident and the interrogation," Dr. Frumkin answered affirmatively.
Another defense expert, Dr. Toomer, testified that:
[T]he conclusion that I reached was that at the time of the commission of the crime Mr. Wright was insane, in other words, as we say, he meets the criteria for insanity, what we call the M'Naghten Rule, but he meets the criteria for insanity and should be considered, in my opinion, insane at the time of the commission of the crime.
....
His ability to know the consequences or recognize the consequences of his actions, that ability would have been impaired by virtue of his mental deficits.
Thus, Dr. Toomer clearly posited that Wright was insane when he committed the subject crimes.
In rebuttal, the State presented the testimony of Dr. Suarez. Dr. Suarez stated that Wright may have been delusional when he committed the crimes. Dr. Suarez attributed the delusion to Wright's smoking marijuana. Further, Dr. Suarez stated that Wright's delusion concerned his father, and had nothing to do with Wright's shooting of the victim. Defense counsel fully cross-examined Dr. Suarez, confronting him with the contrary opinions of Drs. Frumkin and Toomer.
We turn now to the excluded witnesses. Regarding Dr. Ainsley, the only record mention of Dr. Ainsley was at a pre-trial hearing. After the State voiced concern that it had not been able to depose Dr. Ainsley, defense counsel advised the prosecutor that Dr. Ainsley probably would not be called as a witness. The record does not reveal the important nature of Dr. Ainsley's testimony.
Next, in evaluating Dr. Ruiz' report, Dr. Ruiz wrote that she "is inclined to say the defendant met the McNaughton [sic] Standard of Insanity," but would like to review further records. Thus, in light of the equivocal nature of Dr. Ruiz' report and the explicit testimony of defense witnesses Drs. Frumkin and Toomer, Dr. Ruiz' testimony would not have added much more to the jury's understanding of Wright's mental condition at the applicable time. At best, it would have been cumulative.
We are confident that Drs. Ruiz and Ainsley's testimony would not have affected the outcome of Wright's trial. Thus, any error in excluding their testimony is harmless. Accordingly, we affirm the judgment below.
Affirmed.
COPE, J., (dissenting).
I respectfully dissent. The defendant was charged with first-degree murder and the defense was insanity. There is no doubt that defendant-appellant Walter Wright was mentally ill before, during, and after the crime. The issue for trial was whether the defendant met the definition of legal insanity.
*450 Dr. Ruiz evaluated the defendant during the pretrial phase of proceedings and she filed a written report. Defense counsel failed to list her as a witness. When the State objected that the witness was unlisted, defense counsel explained that because Dr. Ruiz had been involved in the earlier proceedings, he believed that she was on the witness list.
The trial court failed to conduct a proper Richardson inquiry. See Richardson v. State, 246 So.2d 771 (Fla.1971); see also State v. Evans, 770 So.2d 1174, 1183 (Fla. 2000). The trial court had run out of patience with defense counsel, who had failed to list other witnesses as well, and excluded the witness without considering the Richardson factors.
A Richardson error is subject to harmless error analysis, but I do not believe that we can say that the error was harmless beyond a reasonable doubt. It is obvious that the defendant was mentally ill. He said bizarre things, slept next to a dog house, and repeatedly took his clothes off before, during, and after the murder in this case. The only issue is whether the defendant fit within the definition of legal insanity. See Patton v. State, 878 So.2d 368, 374-75 (Fla.2004) (stating that Florida follows a modified version of the M'Naghten rule). Dr. Ruiz had filed a report in which she said that she would like to have more information about the defendant, but was inclined to think that the defendant was legally insane.
Under Florida's Criminal Standard Jury Instruction 3.6(a), the defense of insanity is an affirmative defense which the defendant must prove by clear and convincing evidence. In this case, Dr. Ruiz would have provided testimony on behalf of the defendant.
The State expert, Dr. Suarez, had testified in pretrial deposition that he had based his opinion in part on the opinion of Dr. Ruiz. By pretrial order, the court had ruled that Dr. Suarez would not be allowed to say that he had looked at Dr. Ruiz' report. The defense position in substance, however, was that the opinion of Dr. Suarez was not sufficiently supported, and that Dr. Ruiz' testimony was relevant to contradict Dr. Suarez' opinion.
I acknowledge that Dr. Ruiz' testimony was somewhat equivocal, because in her initial opinion she stated that she would like to have more information, but was inclined to think that the defendant met the modified version of the M'Naghten test. Had there been a proper Richardson inquiry, we would have a record pinning down exactly what Dr. Ruiz' opinion was at the time of trial, as well as an evaluation of what prejudice (if any) would be suffered by the State if Dr. Ruiz were allowed to testify. I do not believe we can say the error was harmless beyond a reasonable doubt.