TAYLOR, J.
Appellant, Anthony Jones, appeals his conviction for strong arm robbery. Because the trial court committed harmful error in allowing the lead detective to testify as to her interpretation of statements appellant made during a police interrogation, we reverse for a new trial.
At trial, the victim testified that three men on bicycles approached him at night and cornered him against a fence. The men were dressed in all black, wearing cut-off gloves and “hoodies,” with the hoods covering their heads. The man on the victim’s right, later identified by the victim as appellant, took $180 cash from the victim’s pocket and then pushed him down. The victim testified that this perpetrator’s “hoodie” slipped back, showing the man’s face and revealing that the man had braids or twists in his hair. The victim estimated that the man who pushed him was about 170 pounds, but the victim stated that it was difficult to tell. The victim acknowledged that he had been drinking before he was robbed.
After the robbers left the scene, the victim immediately called the police. Within ten minutes, a police officer found appellant riding a bicycle alone about five or six blocks from the location of the robbery. The victim was taken to the location where appellant was detained. He positively identified appellant as one of the robbers.
Appellant did not have the victim’s money on him when he was arrested. When appellant was booked at the station, he weighed 145 pounds. Although appellant was wearing a black jacket, the jacket did *428 not have a “hoodie.” While there was conflicting testimony as to the color of appellant’s pants, the video interrogation appears to show that appellant was wearing jeans of a grayish color. The testifying officers could not specifically recall if appellant was wearing cut-off gloves or full gloves on the night of the robbery, but one officer — after having his recollection refreshed by video of appellant at the police station — testified that the gloves taken from appellant at the station appeared to be full-fingered gloves.
The lead detective interrogated appellant at the police station. During the interrogation, appellant never confessed to the crime. Appellant told the detective that he had just left his brother’s girlfriend’s house and maintained that he had nothing to do with the robbery. The detective used a ploy in an attempt to gain information, falsely telling appellant that the police had apprehended the other two robbers and that both of them had implicated appellant in the robbery. The following exchange then occurred:
DETECTIVE: ... If you want to add in your side of the story, that’s great, man. If you don’t, that’s on you.
APPELLANT: Story to what, ma’am? I’m not going to put myself somewhere where I know I wasn’t nowhere near.
DETECTIVE: Well, you already told me you ...
APPELLANT: ... I’m not fitting to put myself somewhere where I know I was nowhere.
DETECTIVE: You just told me exactly where you were.
APPELLANT: Leaving my brother girlfriend [sic] house.
DETECTIVE: Which is exactly where shit happened, so you’re saying I’m not going to put myself where I wasn’t. I never told you where this occurred. How can you assume it is not right there where it happened?
APPELLANT: I don’t know where it happened.
DETECTIVE: See what I mean when you start to bullshit? You’re like oh, I was just right here the entire time. I’m not putting myself where it didn’t happen.
That implies that it happened in another location. That’s why I’m saying how would you know that because I never said that? See what I mean?
APPELLANT: Yea. I see what you mean, but ... you’re not fooling me.
After the tape was played at trial, the following exchange took place between the prosecutor and the detective:
STATE: When he indicates to you “I’m not going to put myself somewhere that I wasn’t” and you state to him “Well, you just told me where you are,” what was the purpose of that?
DETECTIVE: ... I wanted to establish that he was saying that this is where I am. This is where I know I told you that I was. I know the crime occurred over here, but I’m not going to tell you that I know where the crime ... not put myself there.
Defense counsel immediately objected and moved to strike the detective’s testimony regarding her interpretation of appellant’s statement, but the trial court overruled the objection and allowed the detective to continue giving her answer:
DETECTIVE: ... Again, the same thing that I answered before, that I’m not going to put myself where the crime is, I was telling you where I happened to be at my brother’s house,” that would indicate to me in my opinion that he knew then that the crime occurred somewhere else and *429 not in front of the place where he told me that he was.
At the conclusion of trial, appellant was found guilty as charged and sentenced to five years in prison, followed by five years of probation.
On appeal, appellant argues that the trial court erred by allowing the lead detective to offer her opinion, over appellant’s objection, that the reason appellant said he was in another location was because he knew where the robbery took place. We agree with appellant’s argument that this was highly prejudicial and improperly bolstered the state’s case.
A trial court’s decision on the admissibility of evidence is reviewed under an abuse of discretion standard. Hudson v. State, 992 So.2d 96, 107 (Fla.2008). That discretion is, however, limited by the rules of evidence. Id.
“Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury.” Floyd v. State, 569 So.2d 1225, 1231-32 (Fla.1990). For example, a witness’s opinion as to the guilt or innocence of the accused is not admissible. Martinez v. State, 761 So.2d 1074, 1079 (Fla.2000). However, a lay witness may offer an opinion or inference about what the witness perceived if:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness’s use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.
§ 90.701, Fla. Stat. (2009).
As a general rule, lay witnesses may not testify about their subjective interpretations or conclusions as to the meaning of another person’s statements. See Thorp v. State, 777 So.2d 385, 395-96 (Fla.2000). Although the rules of evidence allow the interpretation by a witness of coded conversations, the interpretation of clear conversations is not helpful to the jury and is inadmissible. See, e.g., United States v. Dicker, 853 F.2d 1103, 1108 (3d Cir.1988). Any inferences that may be drawn from a defendant’s statement ordinarily should be made by the jury and not by the witness. See Thorp, 777 So.2d at 395-96. Thus, in Thorp, the Florida Supreme Court held that it was error for the trial court to allow a witness to testify as to the meaning he ascribed to the defendant’s statement that he “did a hooker.” Id. The supreme court explained: “The exact meaning of Thorp’s words and the inferences that could be drawn from them, however, were matters for the jury to consider.... Under these circumstances, there was no need to resort to testimony concerning Bullock’s interpretation of Thorp’s words.” Id.
Likewise, in this case, it was error for the trial court to allow the lead detective to offer her opinion as to what she thought the defendant’s statements meant. While the detective did not offer an ultimate opinion regarding appellant’s guilt, the officer’s testimony as to her interpretation of the interrogation improperly bolstered the state’s case and was inadmissible. Appellant did not use any “coded” words which would have required the officer to testify in terms of inferences. Furthermore, the detective’s “interpretation” of appellant’s words was far more incriminating than anything appellant actually said. Indeed, it is doubtful that one could fairly interpret anything in appellant’s statement as some sort of admission that *430 he knew where the robbery occurred. But even if such an interpretation could fairly be drawn from the interrogation, the exact meaning of appellant’s words and the inferences that could be drawn from them were matters for the jury to consider. There was no need to resort to testimony concerning the detective’s interpretation of appellant’s words.
Having concluded that the trial court erred in allowing the lead detective to testify in this manner, we must address whether the error was harmless. Our analysis is guided by Thorp, where the supreme court found the admission of testimony regarding a witness’s interpretation of a defendant’s statement to be harmful error:
By permitting Bullock to interpret the meaning of Thorp’s words, the trial court committed harmful error because it effectively turned Thorp’s obvious admission of involvement in a crime into a confession of murder. As the record reflects, however, Thorp never confessed to murdering Sharon Case. Rather, during the penalty phase of the trial, he admitted only to having sexual intercourse -with the victim, an act which is equally consistent with his admission to Bullock. Therefore, Bullock’s opinion testimony that Thorp’s statement that he “did a hooker” meant that he killed her, was undoubtedly prejudicial and we cannot say beyond a reasonable doubt that it did not affect the jury’s verdict in this case. Under DiGuilio, the admission of Bullock’s opinion testimony constitutes harmful error.
Id. at 396.
Likewise, the error in this case cannot be deemed harmless. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). By permitting the lead detective to interpret the meaning of appellant’s words, the trial court committed harmful error because it effectively turned appellant’s denial of involvement in the robbery into an admission that he knew where the robbery occurred (and thus, by implication, into an admission that he was involved in the robbery). This was undoubtedly prejudicial. As the record reflects, appellant never actually confessed to participating in the robbery. Moreover, there were some inconsistencies between the victim’s description of the perpetrator and appellant’s appearance when he was detained shortly after the robbery. The detective’s improper opinion testimony, which suggested that appellant’s statements meant that he knew where the robbery occurred, may have “tipped the scales” in favor of a conviction in a case where the parties hotly disputed whether the victim properly identified appellant as a participant in the robbery. We cannot say beyond a reasonable doubt that the error did not affect the jury’s verdict in this case. Accordingly, we reverse appellant’s conviction and remand for a new trial.

Reversed and Remanded.

MAY, C.J., and CIKLIN, JJ., concur.