LEVINE, J.
Appellant appeals his convictions for first-degree murder and resisting arrest without violence. Appellant argues that the trial court erred in (1) disallowing lay opinion testimony about his sanity; (2) permitting the state to argue the absence of evidence, which had initially been excluded from the trial; and (3) denying his motion for judgment of acquittal based on insufficient evidence of murder by premeditation. We find that none of the issues merit reversal, and as such, we affirm appellant’s convictions and sentence.
Appellant lived with the victim, Kenneth Herring, who was appellant’s father. Appellant’s mother and the victim’s ex-wife, Nettie Herring, called the victim on the morning of August 5, 2007, and told him she would bring dinner to his house later. When she called to tell the victim that she was on the way, no one answered. Nettie arrived at the home at 4:00 p.m., and she saw the victim’s car in the yard. Eventually, Nettie called the police. The victim was found lying on the kitchen floor, covered with a blanket. Appellant, who was inside the house, attempted to leave but police apprehended him. While being detained by the police, appellant said his name was “God.”
At trial, the medical examiner determined that the victim was stabbed with scissors six times to the head and face. Two stab wounds near the victim’s eyes penetrated the brain stem and were lethal. The victim also sustained twelve stab wounds on the chest and neck area that were not lethal. A DNA analyst testified that the victim’s blood was on the scissors and on appellant’s clothing.
During cross-examination of Nettie, the state objected sidebar to appellant’s questioning her regarding appellant’s mental health issues and diagnosis. The trial court sustained the state’s objection, but permitted appellant’s counsel to question Nettie about appellant’s behavior and his “mental health issues generally.” The trial court stated to appellant that “[y]ou may bring her back later on in your case if it becomes relevant.... [A]t this juncture ... you are not permitted to ask her con-elusory opinions as a lay person that he has a mental illness.” Nettie testified to observing appellant talk to himself and that he would sometimes “bust out laughing.”
The state then moved in limine to prevent lay witnesses from testifying whether appellant was “crazy” or “mentally ill.” The trial court stated that witnesses could testify about unusual behavior, but whether appellant had a mental illness was an issue for the doctors. Appellant’s sister, brother, and the brother’s girlfriend all testified to appellant’s unusual behavior.
The trial court then granted the state’s motion to exclude and prevent Officer Fox from testifying that appellant appeared “possessed.” Officer Fox did testify that appellant said “he was God in the flesh, or something to that effect.” Appellant’s counsel proffered that Detective Toyota would testify that appellant appeared “crazy” to him. Appellant’s counsel noted that both Fox’s and Toyota’s statements would come into evidence later through the testimony of a psychologist. The trial court noted, “If it comes in through the doctors, then it’s in a different shade.” Detective Toyota, the lead investigator, testified that appellant “didn’t seem like he was acting normal.” The detective testified that appellant would “roll his eyes” and was not capable of giving any coherent information.
*345 Dr. Fichera testified that appellant met the criteria for insanity. Dr. Fichera testified to appellant’s hallucinations, delusional beliefs, incoherent speech, and disorganized thought processes. At this point, the trial court, at sidebar, reversed its previous ruling and stated that “I made a mistake. Doctor, you can get into it only as to the witnesses that were close in time. So, that would be Detective Toyota, Fox. I apologize to you, I was wrong.”
Dr. Fichera testified to reviewing Detective Toyota’s report and that the detective thought appellant was “crazy.” Dr. Fich-era further testified that Officer Fox reported that appellant looked “possessed.”
The trial court later stated:
There’s a couple things I wanted to put on the record. To amplify what I said at side-bar_ I read the cases while I was sitting here, and in reading the cases I reversed my decision in this case based on the Garrón case in particular, as well as the Hixon case, I agree with your position. I probably should have even let them testify about it in the case in chief, but I think it’s cured by bringing it in that way. I just disagree with you, [the prosecutor], in your reading of that.
During closing arguments, appellant’s counsel argued, “Detective Toyota, a trained and skilled investigator, a homicide investigator for years, a police officer, I think, for 18 years, told you that in his opinion ... [appellant] was crazy.” Later, appellant’s counsel stated, “[Y]ou have the benefit of several police officers that came into contact with [appellant]. Several of them said, you know, possessed, crazy.”
During the state’s rebuttal closing arguments, the state argued:
[Defense counsel] said ... that Detective Toyota said he was crazy, and you heard it. I submit to you I don’t believe you heard that from Detective Toyota. Dr. Fichera told you that he reviewed Detective Toyota’s report, and according to Dr. Fichera, Detective Toyota said, yes, he was crazy.
I never said, Dr. Fichera, are you making that up. He says that’s what Detective Toyota said in his report, and I’m sure that’s in Detective Toyota’s report. ...
Appellant moved for a mistrial, arguing that the state intimated to the jury that Detective Toyota never said appellant was crazy. Appellant further argued that but for the trial court’s initial ruling, appellant would have elicited such testimony from the detective. Appellant acknowledged that “clearly, pursuant to the Court’s ruling, that we all knew, and I could have called Detective Toyota back.” The trial court denied the motion. Appellant was found guilty and sentenced to life in prison for first-degree murder.
On appeal, appellant argues that the trial court erred by preventing lay opinion testimony about his sanity. We find that based upon the evidence admitted about appellant’s unusual behavior, and the trial court’s ultimate reversal of its ruling on lay testimony, no reversible error occurred.
A trial court’s decision on the admissibility of evidence is reviewed for abuse of discretion, as limited by the rules of evidence. Jones v. State, 95 So.3d 426, 429 (Fla. 4th DCA 2012). Under the Florida Evidence Code, a lay witness may testify about an opinion regarding the witness’s perceptions if:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the *346 witness’s use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2)The opinions and inferences do not require a special knowledge, skill, experience, or training.
§ 90.701, Fla. Stat. (2011).
As the supreme court has explained:
A lay witness, testifying on his or her personal observation as to a defendant’s sanity, must have gained this personal knowledge in a time period reasonably proximate to the events giving rise to the prosecution. Thus, the opinion testimony as to appellant’s sanity could only come from those whose personal observation took place either at the [crime] or in close time proximity thereto.... Any lay opinion testimony as to the appellant’s sanity must necessarily be based on observations made in close time proximity to those events upon which appellant’s sanity is in question.
Garron v. State, 528 So.2d 353, 357 (Fla.1988); see also Hixon v. State, 165 So.2d 436, 441 (Fla. 2d DCA 1964) (“[A] nonex-pert witness who bases his testimony upon relevant facts and circumstances known to and detailed by him may give an opinion as to sanity.”).
To the extent that appellant argues the trial court erred in preventing lay opinion testimony from appellant’s family as to his sanity, this issue is not preserved as appellant did not proffer what testimony his family would have offered. See Morrison v. State, 818 So.2d 432, 448 n. 8 (Fla.2002). As to the exclusion of lay opinion testimony from the police officers regarding appellant’s sanity, any error was harmless under Cruse v. State, 588 So.2d 983 (Fla.1991). In Cruse, the supreme court found the trial court erred in excluding a lay witness’s opinion of the defendant’s mental condition but found the error harmless because the witness was allowed to testify about the defendant’s strange behavior. Like in Cruse, here the police officers were permitted to testify about appellant’s unusual behavior and were prevented only from saying that appellant appeared “crazy” or “possessed.” See also Reynolds v. State, 837 So.2d 1044, 1048 (Fla. 4th DCA 2002).
[5] Additionally, any error in excluding these statements was cured by the subsequent admission of these statements though Dr. Fichera’s testimony. See Calhoun v. State, _ So.3d _, 38 Fla. L. Weekly S779, 2013 WL 5878916 (Fla. Oct. 31, 2013) (finding error in excluding statements harmless because statements were cumulative to other information elicited during trial); Wright v. State, 994 So.2d 447 (Fla. 3d DCA 2008) (holding that error in excluding expert witness testimony on defendant’s sanity was harmless where other expert witnesses testified as to his sanity). Moreover, the trial court reversed its ruling during trial and permitted appellant to introduce lay opinion testimony as to his sanity. Thus, as appellant’s counsel acknowledged in his motion for mistrial, appellant could have recalled the police officers to introduce the previously excluded testimony, but he did not.
Appellant next contends that the trial court erred by permitting the state to argue during closing arguments that the police never testified that appellant was crazy, when the state had successfully excluded such testimony from trial. “Our standard for review of the denial of the motion for a mistrial is whether the trial court abused its discretion.” Miller v. State, 847 So.2d 1093, 1096 (Fla. 4th DCA 2003) (citation omitted). “A motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the *347 entire trial.” Pagan v. State, 830 So.2d 792, 814 (Fla.2002).
We find no error in the trial court’s denial of appellant’s motion for mistrial because the state’s comments during closing argument were a fair response to the statements made by appellant. During closing argument, appellant represented that Detective Toyota told the jury that appellant appeared crazy. In response, the state merely clarified that it was Dr. Fichera, not Detective Toyota, who testified that Detective Toyota described appellant as “crazy.” The state’s argument was a fair comment on the evidence and did not misrepresent any facts to the jury.
In his last argument, appellant asserts that the trial court erred in denying his motion for judgment of acquittal as to the charge of first-degree murder because there was legally insufficient evidence of a premeditated killing. A trial court’s denial of a motion for judgment of acquittal is reviewed de novo. Id. at 803. “Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence.” Id. “Where the element of premeditation is sought to be established by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference.” Cochran v. State, 547 So.2d 928, 930 (Fla.1989). “[A] trial court should rarely, if ever, grant a motion for judgment of acquittal based on the state’s failure to prove mental intent.” Hardwick v. State, 630 So.2d 1212, 1214 (Fla. 5th DCA 1994) (citation omitted).
In the present case, “the nature and number of the wounds inflicted” on the victim support a finding of premeditation. Hampton v. State, 103 So.3d 98, 119 (Fla.2012); see also Hodges v. State, 55 So.3d 515, 541 (Fla.2010) (“[T]he deliberate use of a knife to stab a victim multiple times in vital organs is evidence that can support a finding of premeditation.”) (quoting Williams v. State, 967 So.2d 735, 758 (Fla.2007)). The medical examiner testified that the victim was stabbed multiple times in his face, neck, and chest. Two of the stab wounds near the victim’s eyes penetrated the brain stem and were fatal. Given the evidence of multiple injuries to the head and neck, a reasonable jury could have concluded that appellant formed a premeditated intent to kill.
For all of the foregoing reasons, we affirm appellant’s convictions and sentence.

Affirmed.

STEVENSON and CIKLIN, JJ., concur.